CASE 93.—PARTITION PROCEEDINGS BY MARGARET BAU-
    MAN AND OTHERS AGAINST MARGARET COL-
    LINS AN OTHERS.—May 30.

## Collins, &c., Bauman, &c.

Appeal from Campbell Circuit Court.

A. S. BERRY, Circuit Judge.

Judgment for plaintiffs.    Defendants appeal.—Af-
firmed.

1.  Husband and Wife—Antenuptial Contracts—Construction.—
    Antenuptial contracts should be liberally construed to carry
    into effect the intention of the parties, without regard to
    the strictly technical meaning of the words used.

2.  Same.—A man and woman made an antenuptial contract pro-
    viding "that all property * * * which either party may
    at present own * * .* or may hereafter acquire shall go
    to the survivor hereto, to be held by him or her for and
    during his or her natural life, and after the death of the
    last survivor of them * * * the who'e estate * * *
    shall go and vest in and to the children of" the man in fee
    simple.    They were afterwards married, and the husband,
    who died first, left a will, giving all his property to his wife
    for life, and at her death to his daughter, subject to some
    money bequests to each of his grandchildren.    Held, that
    the contract became operative at the death of the husband,
    when the entire property passed to the widow for life, upon
    whose death it passed to the husband's children, or their
    representatives, who were living when the contract went

Collins, &c., v. Bauman, &c.

into effect; and, the contract having disposed of all the property there was nothing to pass under the will.

JAMES C. WRIGHT for appellants.
(No brief in record.)

SAM E. ANDERSON for appellee, Grand Central Building and Loan Associ-tion.

There are three reasons why the paper in question is not good as to bona fide purchasers for value:
1. As to the property then in his possession, it was not good for want of a sufficient description.
2. As to the property afterwards acquired, it was not good because if it were a conveyance, it was a conveyance of lands in the adverse possession of another and also a mere expectancy.
3. As to the property afterwards acquired, it was not good because it was a conveyance made by a grantor not appearing in the chain of title and therefore a purchaser was not bound by the notice.

### AUTHORITIES CITED.

Wilson v. Johnson, 145 Ind., 40; Devlin on Deeds, sec. 1010, et sep.; Banks v. Ammon, 27 Pa. Stats., 173; Mundy v. Vawter, 3 Grattan, 518; Bailey v. Gilpin, 40 Minn., 321; Herman v. Deming, 44 Conn., 124; DeWolf v. Spragus Manf. Co., 49 Conn., 309; Pargoud v. Pace, 10 La. Ann., 613; Green Bros v. Winterspoon, 37 La. Ann., 751; Jones' Law of Real Property in Conveyancing, sec. 1436; Ky. Stats, sec 210; Beard v. Griggs, 1 J. J. Mar., 26; McCall's Admr. v. Hampton, 98 Ky., 166; Ford v. Unity Church Society of St. Joseph, 23 L. R. A., 561; Leiby v. Wolf, 10 Ohio, 83.

H. GUNKEL attorney for appellees.

### PROPOSITIONS DISCUSSED.

(a)  Is an antenuptial contract binding when followed by marriage?
(b)  Can a child and only heir of a beneficiary who died intestate, under said contract ask for the enforcement of same?

Collins, &c., v. Bauman, &c.

### AUTHORITIES CITED.

Forwood v. Forwood, 86 Ky., 114; A. & E. Enc. of Law, second ed., vol. 19, p. 1233 to p. 1245; Sander v. Miller, 79 Ky. 517; Cole v. Am. Baptist Society, 64 N. H., 445; Neaves v. Scott, 9 How., 196; Garrard v. Garrard, 7 Bush, 436; Hinklebein v. Tottem, 22 Ky. Law Rep., 1357; Brown v. Brown, 25 Ky. Law Rep., 2264; Mitchell v. Mitchell, 4. B. Mon., 380; Powell v. Meyer, 23 Ky. Law Rep., 795; Turner v. Short, 9 Ky. Law Rep., 866; Roper on Property, vol 1, p. 303; sec. 2064 Ky. Stats.; Fuller v. Martin, 96 Ky., 500; Harrington v. Gibson, 109 Ky. 752; Michael v. Morey, 26 Md., 239; 53 Ga., 416; 13 How., 268.

MATT HEROLD for appellee, Union Building Association.

### POINTS AND AUTHORITIES.

1. The courts will adopt the construction of a contract given it by the parties. (Louisville Tpk'e. Co. v. Shadburne, 1 Ky. Law Rep., 325.)

2. The construction of the contract claimed for by appellant would make the same void as against public policy. (Sutton v. Head, 86 Ky., 158.)

3. Notice is an affirmative allegation and must be made before denial is necessary, and if denied must be proved by plaintiff, in this case, appellants. (Carr v. Callaghan, 3 Litt., 365-372.)

4. Contracts in consideration of marriage are recordable instruments, but not on any higher plane than other recordable instruments affecting realty, and are governed by the same rules. (Sec. 494, Ky. Stats.)

5. The purchaser cannot be required to search the records beyond the source of his grantor's title. (Conn. v. Bradish, 14 Mass., 296; Corbin v. Sullivan, 47 Ind., 356; Losy v. Simpson, 11 N. J. Eq., 246; 20 Enc. of Law, 597; Ford v. Unity Church Society, 23 Law Rep. An., 561, and note thereto and cases cited and quoted in said note.)

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

In 1877 John Wenderoth, a resident of Campbell county, Kentucky, entered into a contract with one

Martha Schneider in contemplation of their marriage.
They afterwards married.  The contract was recorded
in the county court clerk's office of Campbell county,
in Newport, Ky., and is in words and figures as fol-
lows:  "That whereas, the said John Wenderoth,
party of the first part, and Martha Schneider, party
the second part, are about to enter the marriage rela-
tion; and whereas, they are desirous, before doing so,
to establish their respective rights to each other's
property:  Now, therefore, be it known that it is
hereby agreed by and between the said John Wende-
roth, party of the first part, and Martha Schneider,
party of the second part, that all property and estate,
whether real, personal, or mixed, which either party
may at present own, be entitled to or may hereafter
acquire, shall go to the survivor hereto, to be held by
him or her for and during his or her natural life, and
after the death of the last survivor of them, or either
of them, the whole of said estate belonging to each
and both of them, of every kind and description, shall
go and vest in and to the children of John Wenderoth,
party of the first part, and to their heirs, forever, 'in
fee simple.' "    At the time of their marriage John
Wenderoth, a widower, had three children.  One child
was born to them.  It died at its birth.  John Wende-
roth died in February, 1905, and his wife in the follow-
ing August.  He left surviving him a daughter, Marga-
ret Collins, and Margaret Bauman, the only child and
heir at law of Henry Wenderoth, a deceased son of
John Wenderoth, and Henry Wenderoth, William
Wenderoth, John Wenderoth, Lulu Meyer, Margaret
Litchenfield Morris, and Jessie Meyer, children of
George Wenderoth, another deceased son of John
Wenderoth.  John Wenderoth was possessed of a com-
fortable estate, and during the course of their married

vol. 125—54.

life he bought and sold several pieces of property and incumbered certain others, which he owned at the time of their marriage. In October prior to his death he made a will by the terms of which he gave all his property to his wife for life, and at her death to his daughter, Margaret Collins, subject to some money bequests to each of his grandchildren. After the death of the widow, Margaret Wenderoth, the children of Henry and George Wenderoth brought suit for a partition and division of the real estate owned by their grandfather at the time of his death, claiming same under the provisions of the ante-nuptial contract executed in 1877, and ignoring the will, under which the entire property was claimed by their aunt, Margaret Collins. Several persons who held liens upon this property were made parties to the suit, as were others who had bought portions of the property, which had been sold by Wenderoth and wife during his lifetime. The trial court adjudged the plaintiffs the owners of such part of the real estate of their grandfather as their fathers, if living, would have taken, and upheld their contention that they took same under the provisions of the marriage contract, and that no property whatever passed to their aunt under the will, and that she, with them, took under the provisions of the marriage contract. To test the correctness of this ruling the defendant Margaret Collins appeals.

The validity of this contract is not seriously questioned, and, indeed, could not be, in the light of numerous decisions of our court upholding contracts of a similar nature; the consummation of the marriage in anticipation of which the contract was executed being uniformly held to be a sufficient consideration to support it. Being a valid contract, the next question to be considered is: What were the rights of the respect-

ive parties under this contract? In dealing with the subject of "Antenuptial Contracts," the rule for construction is thus stated in volume 19, p. 1240, American & English Encyclopedia of Law: "Antenuptial contracts are to be liberally construed, to carry into effect the intention of the parties, without regard to the strictly technical meaning of the words used. For this purpose the whole instrument should be considered, and evidence, also, of the situation of the parties, the surrounding circumstances, and all other means that will throw light on the intention of the parties, will be received." This rule of construction is supported by a long line of authorities. John Wenderoth, at the time of the execution of the contract under consideration, was in comfortable circumstances; and, if his intended wife had any property, it must have been in personalty, as the record does not show that she possessed any realty. He was a widower, with three children. She was a widow, with no children. There was no necessity of any writing whatever for the purpose of enabling them to have, use, and enjoy all of the property they possessed during their married life. They were evidently looking to the protection and comfortable support of the survivor of them, whichever that might be, and ultimately to make provision by which the children of John Wenderoth then living and such as he might thereafter have would jointly inherit such property as they might possess at the date of the death of the survivor of them.

It will be noticed that the contract provides that all of the property shall go to the survivor of them for life, and upon the death of the survivor to the children of John Wenderoth. Clearly it was not the intention of either of the parties to this contract to limit their

use and enjoyment of it during their joint lives, and it would be placing a strained construction upon it to say that they intended to deprive themselves during their joint lives of the right to deal with their property as they chose. Manifestly, from the wording of this contract and from the interpretation which the parties to it placed upon it, it was not to become operative and effective upon their marriage, but upon the death of either of them. This is the construction which they placed upon it during the 27 or more years of their married life. He was an active business man, bought and sold real estate, and conducted his business without regard to the provisions of the marriage contract. His wife joined with him in the deeds conveying such of the property as he sold during their joint lives, and his children, so far as the record shows, at no time during his life asserted any right or claim to any of the property which he owned at the date of the marriage contract or thereafter acquired. They, too, evidently placed the construction upon this contract which their father and stepmother had placed upon it. It will be further noticed that in the contract all property is treated alike. The realty and the personalty are dealt with in the same clause. The same restrictions and limitations that are placed upon and thrown around the realty apply with equal force to the personalty, and this fact is an additional evidence that they did not intend that this contract should become operative, so far as the children are concerned until the death of the survivor of them; nor did they intend that by the execution of this contract they would deprive themselves of the right to make such disposition of their personalty as they saw fit during their joint lives. Any other construction than this would be directly opposed to that which they them-

selves placed upon it and would have deprived them
of the right to the free use and enjoyment, not only
of such property as they had at that time, but of all
property which they might thereafter acquire; for,
under the construction of this contract insisted upon
by appellant, immediately that any property was
acquired by the husband or his wife, or both, it at once
became in their hands a trust estate for the benefit of
the children of John Wenderoth, and this con-
struction, we do not believe the contract itself will
bear, especially when read in the light of the positive
evidence that it was not so construed by any of the
parties to it.    A fair and reasonable construction is
that which the parties placed upon this contract.    This
construction gives full force and effect to their evident
purpose and intention at the time that it was made
and entered into, and makes it a reasonable and just
contract.    Viewed in this light, the parties to it were
not limited or restricted in the free use and enjoyment
of the property which they owned at the time of its
execution and such as they thereafter acquired during
their joint lives.    During this period they might sell
or incumber it at pleasure.    Upon the death of either,
under its terms, the entire property passed to the sur-
vivor, with a right to the free use and enjoyment
thereof during life, and upon the death of the survivor
all of the property, of whatever kind or nature, in
existence, whether on hand at the date of the execution
of the marriage contract or thereafter acquired,
passed to and vested absolutely in the children of
John Wenderoth then living.

Under this construction only those children living
at the time that the contract became operative would
take under it, and hence the child that died in infancy
took no interest or share in this property.    At the

time this child died, both his father and mother were living. The title was not in the child at that time. He owned nothing more than an expectancy—an interest in such real estate as his parents might die possessed of, subject, however, to be defeated by his dying before either of them died, or by their selling or disposing of same before either of them died, in either of which events his expectancy to any of the real estate was subject to be defeated. Hence at the date of his death he owned nothing which his father or mother could inherit, and therefore, upon the death of John Wenderoth in 1905, and the termination of the life estate of his wife a few months thereafter, all of the property, of whatever kind or nature, remaining in her hands undisposed of, under the terms of this antenuptial contract, passed to and became the absolute property of appellant, the only living child of John Wenderoth, deceased, and the children of his two deceased sons, share and share alike; the children of each son taking a one-third interest in the property, the same as their fathers would have taken if living.

It will not be necessary to consider the many interesting questions raised by the mortgage creditors, inasmuch as the construction which we have placed upon the contract gave decedent, John Wenderoth, and his wife, a perfect right to incumber their property as they did. As the marriage contract disposed of the entire estate, no property passed to appellant under the will of her father.

For the reasons given, the judgment of the lower court is affirmed.