Lila Faye SPENCER, Appellant,

v.

ESTATE OF Charles SPENCER,
Appellee.

Nos. 2008–SC–000191–DG,
2008–SC–000196–DG.

Supreme Court of Kentucky.

June 17, 2010.

Richard L. Walter, Samuel Scott Marcum, Boehl, Stopher & Graves, LLP, Paducah, KY, Counsel for Appellant.

Mark Lane Ashburn, Paducah, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

This is a declaratory judgment action to determine the ownership of a brokerage account. The action was brought on behalf of the estate of Charles Spencer, a resident of Paducah who died testate on February 10, 2006. The estate, represented by Pamela Adkins, Mr. Spencer's daughter by his first marriage, filed suit against Lila Faye Spencer, Mr. Spencer's second wife and his widow (Faye). The trial court ruled that the brokerage account was a joint account with the right of survivorship and that upon Charles's death it passed entirely to Faye. The Court of Appeals, rejecting that analysis, held that the Spencers held the brokerage account as tenants in common, with the result that upon Charles's death his one-half interest in the account passed to the estate. Both parties have appealed from that decision. The estate maintains that an ante-nuptial agreement between Charles and Faye precludes her having any interest in the brokerage account while Faye maintains that the trial court correctly ruled that the entire brokerage account passed to her under the right of survivorship. We agree with the Court of Appeals that neither party is entitled to summary judgment on the grounds each alleges but reject the Court of Appeals' alternative ground for summary judgment as premature. Accordingly, we affirm in part, reverse in part, and remand to the trial court for additional proceedings.

## RELEVANT FACTS

Many of the facts are not in dispute. Charles and Faye married on October 30, 1995. Both had been married previously and both had children. On the day prior to their wedding they executed an ante-nuptial agreement, in which they listed the property each held at that point in time and agreed, basically, that neither would claim any interest in the pre-marital property of the other. In particular, the agreement provides in pertinent part as follows:

4. If Spencer [Charles] dies while he is lawfully married to Hughes [Faye], then Hughes shall not ask or claim any part of the estate of Spencer, over and above any portion Spencer would voluntarily elect to bequeath or devise to her by his Last Will and Testament. . . .

9. Hughes hereby releases and relinquishes unto Spencer, his heirs, executors, administrators, and assigns any and all rights or claims by way of dower, inheritance, descent, distribution, survivorship, or otherwise in and to the real and personal property of Spencer, now owned or hereafter acquired, and any and all other rights and claims of every kind and nature arising out of, or growing out of, the marriage which will hereafter exist between the parties. . . .

12. Any and all gifts received by the parties jointly during the marriage shall

be owned by them in equal shares. Any gifts made by the parties to each other during the marriage shall be subjects of memoranda executed by the parties in duplicate and attached to the duplicate originals of this agreement.

The couple attached lists of their pre-marital property to the agreement, and among the property on Charles's list were stocks and bonds that came eventually to be held in an EdwardJones brokerage account of which Charles was the sole registered owner.

On August 24, 2005, Charles executed an EdwardJones Letter of Authorization to Change Registration or Transfer Assets. Pursuant to the Letter, a joint account was opened in the names of "Charles F. Spencer & L. Faye Spencer," and the stocks and bonds from Charles's individual account were transferred to and reregistered in the new joint account with Faye. Charles died just a few months later, on February 10, 2006. Apparently EdwardJones understood Charles and Faye's joint account to include the right of survivorship, and thus when the estate approached the brokerage firm to release the assets of the joint account to it, the brokerage firm refused on the ground that Faye had become the owner. Faye likewise refused the estate's demand that she turn over the joint account assets, and it was her refusal that prompted the estate's declaratory judgment action.

According to the estate, Charles cannot, as a matter of law, be deemed to have given Faye any part of his EdwardJones account because the purported gift was not memorialized in the manner the ante-nuptial agreement specifies, i.e., by memorandum attached to the agreement's duplicate originals. Faye countered by arguing that the joint EdwardJones account came within the Multiple Party Accounts provisions of KRS Chapter 391 which provide that a

qualifying joint account is presumed to belong to the survivor absent "clear and convincing written evidence of a different intention." Thus, Faye claimed that, as a matter of law, the EdwardJones account was hers. These arguments were cited in competing motions for summary judgment. The trial court, as noted, rejected the estate's argument and granted summary judgment to Faye. The Court of Appeals likewise rejected the estate's ante-nuptial agreement argument. We begin our analysis by affirming the Court of Appeals in that regard.

### ANALYSIS

 As the parties correctly note, summary judgment is not proper unless the record, when examined in its entirety, shows that there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." CR 56.03. "The record must be viewed in a light most favorable to the party opposing the motion ... and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991). Because in general a summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference either to the trial court's assessment of the record or its legal conclusions. *Malone v. Kentucky Farm Bureau Mutual Insurance Company*, 287 S.W.3d 656 (Ky. 2009) (citing *Schmidt v. Leppert*, 214 S.W.3d 309 (Ky.2007)).

### THE APPEAL BY THE ESTATE OF CHARLES SPENCER

**I. The Ante-nuptial Agreement Does Not Entitle the Estate to Summary Judgment.**

The estate maintains that it was entitled to summary judgment because the Ed-

wardJones account cannot be deemed to have been given to Faye. It insists that under paragraph 12 of the ante-nuptial agreement, as quoted above, any gift of Charles's property to Faye during the marriage was to be memorialized in writing with the writing attached to both copies of the agreement. Because that requirement was not met, the estate argues, the agreement's strict terms should be given effect and the presence of Faye's name on the joint EdwardJones account should be disregarded.

■ As the estate correctly notes, ante-nuptial agreements are a recognized type of contract in Kentucky, *Gentry v. Gentry*, 798 S.W.2d 928 (Ky.1990), and like other contracts, they are to be construed so as to give effect to the parties' intentions. *Pressman v. Pressman's Administrator*, 275 Ky. 45, 120 S.W.2d 739 (1938). Unlike other contracts, however, ante-nuptial agreements are often negotiated and entered into when the parties are not truly bargaining at arms length, and they are often sought to be enforced long after their creation when the parties' circumstances may have changed substantially. For these reasons, we have insisted that courts retain broad discretion to "modify or invalidate all or part of an ante-nuptial agreement where enforcement is unconscionable." *Lane v. Lane*, 202 S.W.3d 577, 579 (Ky.2006). Further, we have long held that such agreements are to be construed liberally, not in deference "to the strictly technical meaning of the words used," but with reference to "the whole instrument . . . and evidence, also, of the situation of the parties, the surrounding circumstances, and all other means that will throw light on the intention of the parties." *Collins v. Bauman*, 125 Ky. 846, 102 S.W. 815, 816 (1907).

■ The trial court and the Court of Appeals both ruled that, considered as a whole, the ante-nuptial agreement was not intended to preclude gifts between the parties and that the memorandum requirement of paragraph 12 was not so inflexible a requirement as to defeat on purely technical grounds a transfer of property that was clearly intended to be a gift. That gift provision of the agreement should be understood, rather, as requiring that, for gifts between the parties, the giver's intention be clearly evidenced by a writing. We agree that this is a reasonable construction of paragraph 12, which clearly was not meant to frustrate gifts between the parties, but only to prevent gift claims by the alleged recipient where the giver's intention had not been made manifest. We agree with the lower courts too, then, that the EdwardJones Authorization Letter executed by Charles, even though it was not attached to the ante-nuptial agreement, satisfied the agreement's requirement that gifts between the parties be memorialized in writing.

## II. The Ante-nuptial Agreement Did Not Preclude Summary Judgment for Faye.

■ The estate next contends that, even granting this construction of paragraph 12—that it could be satisfied by a clear manifestation of the giver's intent even if the gift memorandum was not attached to the agreement—the Court of Appeals erred by ruling that the creation of the joint EdwardJones account amounted to a clear manifestation of Charles's intent to give an interest in the account to Faye. It concedes that, generally, when one person causes intangibles, such as stock certificates, notes, bonds, cashier's checks, or bank accounts "to be issued by a second person in favor of another, individually or jointly, the latter becomes a third party beneficiary of the transaction, and is vested with the rights evidenced by the instru-

ment." *Hensley v. Ball,* 380 S.W.2d 279, 283 (Ky.1964) (stock certificates, bonds, cashier's check); *Saylor v. Saylor,* 389 S.W.2d 904 (Ky.1965) (bank savings account). The estate argues, however, that here the fact that Charles did not comply with the strict terms of the ante-nuptial agreement could be viewed as evidence that he did not intend to confer upon Faye the rights usually incident to joint ownership. In that way, the estate maintains, an issue of material fact arises, which should have been submitted to a jury and which thus precludes the summary judgment in favor of Faye. We agree with the Court of Appeals, however, that notwithstanding the ante-nuptial agreement, Charles's creation of the joint EdwardJones account was clearly intended to confer upon Faye an interest in the account. That, as noted, is the consequence Kentucky law presumes. The estate has suggested no other reason for creating the joint account, and we do not attribute to Charles a senseless act. The ante-nuptial agreement, in sum, neither entitles the estate to summary judgment nor precludes the summary judgment awarded to Faye, and on those points, accordingly, we affirm the Court of Appeals.

## III. By Promoting and Acquiescing in a Judgment That Did Not Properly Invoke CR 54.02, The Estate Forfeited Any Additional Claims it May Have Had.

The estate raises one additional issue in its appeal. The EdwardJones account, which held the bulk of Charles's assets, was the main focus of the parties' dispute, but the estate's complaint also alleged that it was entitled to Charles's half of household items jointly acquired during the marriage and to the return of household items that Charles brought to the marriage or acquired separately during marriage. The complaint sought a declaration defining both sets of household contents. This aspect of the complaint appears to have been forgotten during the dispute over the EdwardJones account. Neither party's summary judgment motion indicated that what was being sought was only a partial summary judgment or that issues in addition to those relating to the brokerage account remained to be addressed. Accordingly, the trial court's order granting summary judgment to Faye closed the entire case by reciting that "the plaintiff's Complaint is dismissed with prejudice."

The summary judgment prompted the estate's motion to alter, amend, or vacate, a motion which also requested the trial court to enter findings and conclusions in support of its ruling. At the hearing on that motion, the estate, for the first time apparently, asserted that the summary judgment had not addressed the household property questions and so requested either that the judgment be withdrawn until those questions could be addressed or that the summary judgment be made partial but final-and-appealable. From the bench, the trial judge acknowledged that the household property issues had not been addressed, but, apparently accepting counsel's suggestion that he could "piecemeal" the judgment, entered Findings of Fact and Conclusions of Law explaining the summary judgment on the EdwardJones issue, otherwise denied the estate's motion to alter, amend, or vacate; and recited that the denial of the estate's motion was "a final and appealable order." Neither the order nor the judgment itself recited that there was "no just reason for delay" as provided in Kentucky Rule of Civil Procedure (CR) 54.02.

The estate did not renew its motion to have the judgment altered nor did it otherwise object to the trial court's order. On appeal, however, it contends that

the Circuit Court obviously erred in dismissing the entire claim, when the motion brought by the Estate was for a partial summary judgment. Faye's counsel, the Estate's counsel, and the Circuit Court Judge, all conceded in the oral arguments at the hearing held on January 12, 2007, that the entire case should not have been dismissed and other issues remained for further litigation. Unfortunately, when the Order was entered it was again listed as a total dismissal of the claim.

�no As the Court of Appeals observed with respect to this assertion by the estate, when the trial court entered its order denying the estate's motion to alter or amend, the parties' and the court's expectation appears to have been that the Court of Appeals would address the EdwardJones account issue and would then remand for additional proceedings concerning the household property. Unfortunately, although CR 54.02 allows in certain circumstances for an appeal in a multi-claim action from a partial judgment disposing of less than all the claims, that rule requires that the partial judgment recite both that the judgment is "final" and that "there is no just reason for delay." *Watson v. Best Financial Services, Inc.*, 245 S.W.3d 722 (Ky.2008). Absent those certifications, the rule is not invoked.[1] The judgment here did not certify that "there was no just reason for delay," and thus we are confronted with a situation in which the judgment the estate recommended to the court and acquiesced in is now challenged by the estate, essentially, as having been interlocutory and non-appealable.

Although we are not unsympathetic to the estate's plight, given that all involved apparently expected that the "household items" portion of the estate's claim would be addressed after this appeal, the hard fact is that it was the estate's responsibility to ensure that the judgment was in the proper form to invoke CR 54.02. *Signer v. Arnold*, 436 S.W.2d 493 (Ky.1969). Not only did the estate fail to advise the trial court of the proper form of a partial judgment pursuant to CR 54.02, but it suggested and acquiesced in the improper form the court employed. The estate will not be heard on appeal to claim that it is entitled to relief from its own mistake in the trial court. The Court of Appeals did not err, therefore, by refusing to grant relief on this ground.

## THE APPEAL BY LILA FAYE SPENCER

Turning now to Faye's appeal, she maintains that the EdwardJones account was a survivorship account, which, upon Charles's death, became entirely hers. She argued before the trial court that the account was governed by the Multiple Party Accounts provisions of KRS Chapter 391.[2] One of those provisions, KRS 391.315, provides in pertinent part that

[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties to the account as against the estate of the decedent unless there is clear and convincing written evidence of a different intention at the time the account is created.

1. The rule does not apply, moreover, where there are not multiple claims but rather a single claim with multiple elements of relief. *General Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022 (6th Cir.1994). We need not decide, however, whether the estate's complaint presented a single claim or multiple claims,

because even if CR 54 could have been invoked, the trial court's judgment did not invoke it.

2. The Multiple Party Accounts provisions are KRS 391.300–391.355.

Faye claimed, and the trial court agreed, that this provision applies to the Edward-Jones brokerage account and accordingly that the account belonged entirely to Faye. The Court of Appeals rejected Faye's argument, however, and ruled instead that the Multiple Party Accounts provisions of KRS Chapter 391 do not apply to brokerage accounts. The Court then proceeded to rule that the joint EdwardJones account was, as a matter of common law, to be deemed a tenancy in common, with Faye's half of the account remaining hers at Charles's death, and Charles's half passing to his estate. On appeal, Faye maintains that the EdwardJones account does indeed come within the Multiple Party Account provisions of KRS Chapter 391 and, further, that even apart from the statutory presumptions applicable to "multi party accounts," the EdwardJones account was a survivorship account. Although we agree with the Court of Appeals that the Multiple Party Account provisions of KRS Chapter 391 do not apply to brokerage accounts and thus that the trial court erred when it found a statutory basis for summary judgment, we agree with Faye that the Court of Appeals overstepped its role when it in effect crafted its own summary judgment in the face of a material factual dispute.

## I. Brokerage Accounts Are Not Governed By the Multiple Party Account Provisions of KRS Chapter 391.

As noted above, KRS 391.315 provides that the surviving party to a joint account owns the sums remaining on deposit as against the estate of the decedent absent clear and convincing written evidence of a contrary intent. The statute thus creates a rebuttable presumption that a qualifying "joint account" is a survivorship account. The scope of this joint-account presumption, and in particular whether it applies to

brokerage accounts, is a matter of first impression for this Court.

We may begin our consideration of the question by reiterating that our goal in construing any statute is to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration. *Osborne v. Commonwealth*, 185 S.W.3d 645 (Ky.2006). We presume, of course, that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes. *Hall v. Hospitality Resources, Inc.*, 276 S.W.3d 775 (Ky.2008); *Lewis v. Jackson Energy Cooperative Corporation*, 189 S.W.3d 87 (Ky.2005). We also presume that the General Assembly did not intend an absurd statute or an unconstitutional one. *Layne v. Newberg*, 841 S.W.2d 181 (Ky.1992). Only if the statute is ambiguous, however, or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute's legislative history or the canons of construction. *MPM Financial Group, Inc. v. Morton*, 289 S.W.3d 193 (Ky.2009); *Stephenson v. Woodward*, 182 S.W.3d 162 (Ky.2005). On the contrary, if a plain reading of the statute yields a reasonable legislative intent, then that reading is decisive and must be given effect. *Osborne v. Commonwealth, supra.*

KRS 391.315 was originally enacted in 1976 as part of H.B. 98. In pertinent part, that Bill was based upon Article VI of the Uniform Probate Code, as promulgated by the National Conference of Commissioners of Uniform State Laws in 1969. Article VI addressed "Non-probate Transfers," *i.e.*, transfers of a decedent's assets outside the probate system, and was a response to the

burgeoning interest during the 1960s in probate avoidance devices, or "will substitutes," such as the revocable inter vivo trust. William M. McGovern, Jr., *Nonprobate Transfers Under The Revised Uniform Probate Code*, 55 Alb. L.Rev. 1329 (1992) (McGovern). Article VI comprised two parts, a part devoted to "Multiple Party Accounts" and a part consisting of a single statutory section addressing more generally written "Provisions Relating to Effect of Death." These parts are now codified in Kentucky respectively at KRS 391.300–391.355 and KRS 391.360. The Multiple Party Accounts provisions validate as non-testamentary three types of will substitute: the joint account, the Totten trust, and the payable-on-death (POD) account. KRS 391.315, KRS 391.325. KRS 391.360 validates as non-testamentary certain other written instruments, such as insurance policies and pension plans, providing for the disposition of property upon the owner's death.

KRS 391.300 provides definitions for several of the key statutory terms. A "joint account" is defined as "an account payable on request to one (1) or more of two (2) or more parties whether or not mention is made of any right of survivorship." KRS 391.300(4). An "account," in turn, is defined as "a contract of deposit of funds between a depositor and a financial institution, and includes a checking account, savings account, certificate of deposit, share account and other like arrangement." KRS 391.300(1). A "financial institution," finally, is defined as "any organization authorized to do business under state or federal laws relating to financial institutions, including, without limitation, banks and trust companies, savings banks, building and loan associations, savings and loan companies or associations, and credit unions." KRS 391.300(3).

Construing these definitions, the Court of Appeals ruled that brokerage firms, such as EdwardJones, are not sufficiently bank-like to be deemed "financial institutions," and that brokerage accounts, or securities accounts, such as the Spencers' joint account, do not fit comfortably within the concept of a "deposit of funds" and thus do not qualify as "accounts" for statutory purposes. Given that the EdwardJones account did not come within the KRS 391.315 presumption of survivorship, its ownership upon Charles's death was thus a matter of common law. Faye argues that the residuary phrases in the definitions of "financial institution" and "account," *i.e.*, the defining of "financial institution" as being "without limitation" to the examples listed in the statute, and the inclusion of "other like arrangement" in the definition of "account," indicate the General Assembly's intent that those definitions be construed broadly and that thus construed they embrace brokerage firms and brokerage accounts.

Like the Court of Appeals, most of the other courts that have addressed this issue have construed identical or similar definitions as not applying to securities or to brokerage accounts. *deKallos v. Weis*, 941 S.W.2d 630 (Mo.App.1997); *Ashe v. Hurt*, 117 Idaho 266, 787 P.2d 252 (1990); *In re Palmer*, 145 Wash.App. 249, 187 P.3d 758 (2008); *Berg v. D.D.M.*, 603 N.W.2d 361 (Minn.App.1999); *Estate of Reed*, 681 A.2d 460 (Me.1996); *Union National Bank of Texas v. Ornelas–Gutierrez*, 772 F.Supp. 962 (1991). As Faye points out, however, the Supreme Court of Pennsylvania has reached the opposite conclusion and has held that the residuary phrases in the definitions of "financial institution" and "account" cast a net wide enough to bring in brokerage firms and brokerage accounts. *Deutsch, Larrimore & Farnish, P.C. v. Johnson*, 577 Pa. 637, 848 A.2d 137 (2004). In *Ashe*, too, the Supreme Court of Idaho left open the possibility that a

sufficiently bank-like brokerage firm might come within the statute. To the extent, however, that the definitions' residuary phrases can thus be thought to render the definitions ambiguous, we are persuaded that the ambiguity must be resolved as the Court of Appeals resolved it, so as to exclude the EdwardJones account.

This conclusion follows from related acts by our General Assembly. To place those acts in context, we may observe that Article VI of the Uniform Probate Code as promulgated in 1969 was perceived, at least, as not applying to securities and security accounts. The failure of the uniform act to address securities drew a certain amount of critical commentary. *See, e.g.,* Diane C. Amado, *Uniform Probate Code Section 6–201: A Proposal to Include Stocks and Mutual Funds,* 72 Cornell L.Rev. 397 (1987); Richard V. Wellman, *Transfer–on–Death Securities Registration: A New Title Form,* 21 Ga. L.Rev. 789 (1987). That and other criticism led the National Conference of Commissioners on Uniform State Laws to approve, in 1989, a revised version of Article VI. The new version retains the two parts of the original version, although with modifications to the "Multiple Party Accounts" provisions, and incorporates a new third part, referred to as the "Uniform TOD [transfer-on-death] Security Registration Act." Ronald R. Volkmer, *Legislative Bill 250: The New Nonprobate Transfers Article of the Nebraska Probate Code,* 27 Creighton L.Rev. 239 (1993); McGovern, *supra.*

The Kentucky General Assembly has not adopted the 1989 revisions of parts one and two of Article VI. In 1998, however, in H.B. 314 our General Assembly did adopt the Uniform TOD Security Registration Act, which has been codified at KRS 292.6501–292.6512. According to the "Prefatory Note" accompanying the revised Article VI,

The purpose of Part 3 ... is to allow the owner of securities to register the title in transfer-on-death (TOD) form. Mutual fund shares and accounts maintained by brokers and others to reflect a customer's holdings of securities (so-called "street accounts") are also covered. The legislation enables an issuer, transfer agent, broker, or other such intermediary to transfer the securities directly to the designated transferee on the owner's death. Thus TOD registration achieves for securities a certain parity with existing TOD and pay-on-death (POD) facilities for bank deposits and other assets passing at death outside the probate process.

The TOD registration under this part is designed to give the owner of securities who wishes to arrange for a nonprobate transfer at death an alternative to the frequently troublesome joint tenancy form of title.

Uniform Probate Code, Article VI, Prefatory Note (1989 rev.).

Explaining the separate treatment of securities and securities accounts apart from the bank and bank-like accounts addressed in the "Multiple Party Accounts" provisions, the UPC drafters observe that traditionally the default rules for life-time ownership in the two areas have differed, with securities more like real estate in that "the values are typically large and the transactions relatively infrequent, which is why the legal regime requires concurrence of all concurrent owners for transfers affecting such assets." *Id.* Multi-party bank accounts, on the other hand, typically facilitate frequent small transactions and thus usually "allow any one cotenant to consume or transfer account balances." *Id.* The drafters acknowledged that this "distinction between bank accounts and securities has begun to crumble," *id.,* as banks increasingly offer large-value investment

accounts such as certificates of deposit, and brokerage firms increasingly render securities subject to small, recurrent transactions through cash management and money market accounts. Nevertheless, "even though new forms of contract have rendered the boundaries between securities and bank accounts less firm, the distinction seems intuitively correct for statutory default rules." *Id.* In the securities area, the drafters believed, those rules were "unambiguous," and it was not the purpose of part three of the 1989 revision to alter them. On the contrary, "[t]he sole purpose of the present statute is to facilitate a nonprobate TOD mechanism as an option for [securities] owners." *Id.*

Although the commentary to the Uniform Probate Code is not to be attributed to the General Assembly, the adoption of part three of Article VI makes it clear that the General Assembly did not intend the "Multiple Party Accounts" provisions to apply to securities and brokerage accounts since otherwise the adoption of part three of the 1989 UPC would have been redundant and superfluous. Also in 1998, in H.B. 165, the General Assembly amended KRS 391.360, to include as nontestamentary "[a] written provision for a nonprobate transfer on death in a[ ] ... certified or uncertified security account agreement." This change, too, would be meaningless if securities accounts were already included in the Multiple Party Account provisions. We presume, of course, that the General Assembly did not intend for its 1998 acts to be meaningless, and so conclude that the Court of Appeals was correct when it held that the KRS 391.315 presumption of right of survivorship did not apply to the Spencers' joint EdwardJones account.

## II. The Court Of Appeals' Alternative Summary Judgment Was Premature.

 The conclusion that KRS 391.315 does not apply to the EdwardJones ac-

count removed the basis for the trial court's award of summary judgment to Faye. Having determined that neither party presented a valid ground for summary judgment, the Court of Appeals should have, at that point, remanded the matter to the trial court for additional proceedings. Instead, relying on *Saylor v. Saylor, supra,* the Court of Appeals ruled that because the EdwardJones account had been opened in the form of "Charles F. Spencer & L. Faye Spencer", as opposed to "Charles F. Spencer *or* L. Faye Spencer," it must, as a matter of common law, be deemed a tenancy in common and so divided equally between Faye and the estate. This is a theory of the case that was not developed in, or ruled upon by, the trial court, and in particular it is a theory the factual basis for which the parties have had no opportunity to address. It is true that in *Saylor* the former Court of Appeals held that a joint account in the conjunctive ("and") was rebuttably presumed to indicate a tenancy in common, whereas a joint account in the disjunctive ("or") was rebuttably presumed to indicate a joint tenancy with the right of survivorship. The crucial word here, however, is "rebuttably." In the absence of evidence of a contrary intent, the presumptions provide rules of decision. Where there is contrary evidence, however, a question of fact may require disposition by the fact finder, or, if the evidence of a contrary intent is clear beyond dispute, a ruling to that effect may be required by the court.

Faye has not had an opportunity to rebut the presumption the Court of Appeals imposed on her and to prove that the EdwardJones account was intended to be a survivorship account. It does not appear from the record, moreover, that it would be impossible for her to do so. At one of the preliminary hearings, counsel for Faye

stated that the EdwardJones account representative who had opened the joint account for them was available to testify concerning the account. Furthermore, Faye has attached to one of her briefs monthly account statements which identify the account as one with survivorship. This is enough of an evidentiary showing to overcome the summary judgment the Court of Appeals imposed, and even if it were not, a remand would still be necessary to give Faye an opportunity to develop such a showing. The Court of Appeals' attempt to fashion an alternative ground for summary judgment exceeded its role and was erroneous.

### CONCLUSION

In sum, neither the estate nor Faye was entitled to the summary judgments they sought from the trial court. The estate was not entitled to summary judgment because the ante-nuptial agreement upon which it relied did not foreclose gifts from Charles to Faye. Further, while the nature of Charles's gift to Faye will be determined on remand, the ante-nuptial agreement's requirement that the giver's intention be clearly memorialized was satisfied by Charles's Letter of Authorization creating the joint EdwardJones account, notwithstanding the fact that the Letter was not attached to the ante-nuptial agreement. Faye was not entitled to summary judgment because the statutory presumption on which she relied—that "joint accounts" under KRS 391.315 include the right of survivorship—does not apply to brokerage accounts such as the Edward-Jones account at issue here. Because neither party was entitled to summary judgment, the dispute over the ownership of the EdwardJones account should have been remanded to the trial court for additional proceedings. The Court of Appeals' attempt to resolve the dispute in the absence of an adequately developed record by ordering summary judgment on an alternative ground was erroneous.

Accordingly, in the appeal by the estate of Charles Spencer, 2008–SC–000196, we affirm, and in the appeal by Lila Faye Spencer, 2008–SC–000191, we affirm in part and reverse in part the Opinion of the Court of Appeals. We, further, remand the matter to the McCracken Circuit Court for additional proceedings consistent with this opinion.

All sitting. All concur.