**PROGRESSIVE MAX INSURANCE COMPANY, Appellant,**

**v.**

**NATIONAL CAR RENTAL SYSTEMS, INC., Appellee.**

No. 2009–SC–000577–DG.

Supreme Court of Kentucky.

Jan. 20, 2011.

Robert Leo Steinmetz, Christopher M. Mussler, Gwin Steinmetz & Baird, PLLC, Louisville, KY, Counsel for Appellant.

Michael Freeman Lawrence, Louisville, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

This appeal arises from a subrogation dispute regarding basic reparations benefits (BRB) paid by Appellee, National Car Rental Systems, Inc. (National) to a passenger of one of its rental vehicles. After payment, National sought full reimbursement against Appellant, Progressive Max (Progressive), the insurer of the driver of National's vehicle.

After the Jefferson Circuit Court granted summary judgment in National's favor, the Kentucky Court of Appeals affirmed, holding that (1) Progressive was primarily liable for BRB; and (2) National may pursue its claim via KRS 304.39–050. We granted discretionary review to determine the correctness of that opinion and now reverse.

## I. *Background*

·On October 26, 2001, Ed Jones rented a vehicle from National, but declined to purchase any extended insurance coverage for the use of the rental vehicle from the rental company.[1] Approximately six days later, Jones was involved in a motor vehicle accident while driving National's vehicle, injuring his passenger, Shannon Wilkerson. Wilkerson sought recovery from Jones and Progressive (which provided coverage for Jones's liability for both the use of his vehicle and the use of a rental vehicle). At some point, Wilkerson received BRB from National (the vehicle owner) in the amount of ten-thousand dollars.

Approximately thirty days after Wilkerson filed suit against Jones and Progressive, Wilkerson moved to dismiss her suit. She did not provide National with notice regarding the existence of her suit or her motion to dismiss. After learning that Wilkerson's claim had been dismissed, National filed suit against Progressive under KRS 304.39–070,[2] seeking reimbursement

---

1. National is a self-insured rental car company.

2. KRS 304.39–070 provides in pertinent part:
   A reparation obligor shall have the right to recover basic reparation benefits paid to or for the benefit of a person suffering the injury from the reparation obligor of a secured person as provided in this subsection, except as provided in KRS 304.39–140(3). The reparation obligor shall elect to assert its claim (i) by joining as a party in an

of the BRB that it paid to Wilkerson as a result of the injury caused by Jones. Progressive defended on grounds that, under the clear dictates of KRS 304.39–070, National was required to either join in an existing action or submit to arbitration. National later moved for summary judgment, alternatively asserting its right to sue and recover under KRS 304.39–050.[3] Ruling on National's motion for summary judgment, the trial court held that, as a matter of law, National was entitled to recover the BRB paid to Wilkerson and awarded ten-thousand dollars, plus costs and post judgment interest to National.[4]

On direct appeal, Progressive unsuccessfully argued that the trial court erred in granting summary judgment because: (1) National did not pursue its reimbursement claim via the authorized avenues outlined in KRS 304.39–070(3), i.e., to join in an existing action by the injured person or to submit its claim to arbitration;[5] and (2) because Progressive was not a reparations obligor.

The Court of Appeals, applying *Affiliated FM Ins. Companies v. Grange Mut. Cas. Co.*, 641 S.W.2d 49, 50 (Ky.App.1982), reasoned that National could bring its action pursuant to KRS 304.39–050 and held that the procedures outlined in KRS 304.39–070(3) did not apply to an action brought pursuant to KRS 304.39–050. The court further held that because Jones refused to purchase the coverage from National when he rented the vehicle, and because his policy with Progressive covered his liability while using a rental vehicle, the primary obligor in this case was indeed Progressive.

Progressive then petitioned this Court for discretionary review, arguing that the Court of Appeals erred in determining that: (1) Progressive was a reparations obligor; and (2) that National's claim could proceed under KRS 304.39–050 regardless of the fact that it did not avail itself of the procedures outlined in KRS 304.39–070.

## II. *Analysis*

### A. *Primary Basic Reparations Obligor*

In 1974, the General Assembly of Kentucky enacted the Motor Vehicle Reparations Act (MVRA) in an attempt to effect, *inter alia,* the following purposes:

(2) To provide prompt payment to victims of motor vehicle accidents without regard to whose negligence caused the accident in order to eliminate the inequi-

---

action that may be commenced by the person suffering the injury, or (ii) to reimbursement, pursuant to KRS 304.39–030, sixty (60) days after said claim has been presented to the reparation obligor of secured persons. The right to recover basic reparation benefits paid under (ii) shall be limited to those instances established as applicable by the Kentucky Insurance Arbitration Association as provided in KRS 304.39–290.

3. KRS 304.39–050 provides, in pertinent part:

The basic reparation insurance applicable to bodily injury to which this subtitle applies *is the security covering the vehicle occupied by the injured person at the time of the accident* or, if the injured person is a pedestrian, the security covering the vehicle which struck such pedestrian. *If the reparation obligor providing such insurance fails to make payment for loss within thirty (30) days after receipt of reasonable proof of the fact and the amount of loss sustained, the injured person shall be entitled to payment under any contract of basic reparation insurance under which he is a basic reparation insured and the insurer making such payments shall be entitled to full reimbursement from the reparation obligor providing the security covering the vehicle.* (emphasis added)

4. The trial court cited no authority in its decision.

5. *See* KRS 304.39–030.

ties which fault-determination has created;

(3) To encourage prompt medical treatment and rehabilitation of the motor vehicle accident victim by providing for prompt payment of needed medical care and rehabilitation;

. . . .

(5) To reduce the need to resort to bargaining and litigation through a system which can pay victims of motor vehicle accidents without the delay, expense, aggravation, inconvenience, inequities and uncertainties of the liability system;

. . . .

(8) To correct the inadequacies of the present reparation system, recognizing that it was devised and our present Constitution adopted prior to the development of the internal combustion motor vehicle.

KRS 304.39–010. Given these straight-forward purposes, it is apparent that the General Assembly was principally concerned with the ability of motor-vehicle-accident victims to promptly recover reparations. With this principle in mind, this Court recently interpreted the MVRA so as to give effect to the Legislature's desire that motor vehicle tort victims receive prompt payment in the event that two insurance companies become entangled in a priority dispute. *Kentucky Farm Bureau Mut. Ins. Co. v. Shelter Mut. Ins. Co.*, 326 S.W.3d 803, 806–07 (Ky.2010). In *Shelter*, we held that where both policies (one covering the vehicle and one covering the driver) claim to provide only excess coverage, the spirit and intent of the MVRA mandates that the policy covering the vehicle and vehicle owner take priority over that of the permissive driver. *Id.* Our holding there reflected this Court's concern with "uncertainty and potential delays" and more importantly the possibility that a tort victim would not receive

prompt reparations when two insurance companies become embroiled in a priority dispute. *Id.* To hold otherwise in that case would have confounded the clear legislative purpose of the MVRA.

■ Here, once again, we are asked to determine an is sue of priority, but, under different circumstances. Rather than addressing two excess clauses as we did in *Shelter*, this Court now faces the question of whether the vehicle owner's insurance should take priority over the driver's insurance when BRB are owed to an injured third party. We again hold that, per the policies established in the MVRA, priority lies with the vehicle owner.

This Court has consistently adhered to the maxim that a statute should be read according to its plain meaning. *Spencer v. Estate of Spencer*, 313 S.W.3d 534, 541 (Ky.2010). Applying this rule to the case at bar, we conclude that a plain reading of the MVRA—particularly a provision specifically relating to priority (KRS 304.39–050)—compels the conclusion that National is indeed the primary obligor of basic reparations benefits. KRS 304.39–050 provides in pertinent part:

*Priority* of applicability of security for payment of basic reparations benefits The basic reparation insurance applicable to bodily injury to which this subtitle applies *is the security covering the vehicle occupied by the injured person at the time of the accident* or, if the injured person is a pedestrian, the security covering the vehicle which struck such pedestrian. *If the reparation obligor providing such insurance fails* to make payment for loss within thirty (30) days after receipt of reasonable proof of the fact and the amount of loss sustained, the injured person shall be entitled to payment under any contract of basic reparation insurance under which he is a basic reparation insured and *the insurer*

*making such payments shall be entitled to full reimbursement from the reparation obligor providing the security covering the vehicle.* (emphasis added).

■ As is clear, KRS 304.39–050 contemplates the possibility of two insurers: (1) those covering the vehicle; and (2) all others. It is also clear that where a vehicle is secured by an insurance policy, but operated at the time of injury by a driver who is insured by a second policy—separate and apart from the vehicle's insurance—the insurance "covering the vehicle occupied by the injured person at the time of the accident" will take priority over other insurance. *Id.; see Roth v. Old Republic Ins. Co.,* 269 So.2d 3, 5 (Fla.1972); *U.S. Fidelity & Guaranty Co. v. Safeco Ins. Co. of America,* 522 S.W.2d 809, 821 (Mo.1975) (stating that the general rule places primary liability on the insurer of the owner of the automobile). Therefore, in this case, because National was the insurer of *"the vehicle occupied by the injured person at the time of the accident,"* we hold that National was indeed the primary obligor of BRB per the plain instructions of KRS 304.39–050.

## B. *Subrogation*

Notwithstanding the determination that National is the primary obligor in this case, that is not to say that it may not recover the monies paid to Wilkerson. Rather, what is next to be decided is how National may seek reimbursement, i.e., whether and how National may pursue its subrogation rights under KRS 304.39–070 or KRS 304.39–050.

As stated above, the purpose and policy section of the MVRA evinces the General Assembly's concern with a motor vehicle accident victim's ability to recover in a timely fashion. In an obvious attempt to further hasten and encourage insurance companies to provide a victim's repara-

tions, the Legislature included in the MVRA two provisions equipping insurance companies with the ability to seek reimbursement of BRB paid to injured parties. These provisions, found in KRS 304.39–070 and KRS 304.39–050, provide in pertinent part:

"Secured person"; obligor's rights to recovery

A reparation obligor shall have the right to recover basic reparation benefits paid to or for the benefit of a person suffering the injury from the reparation obligor of a secured person as provided in this subsection, except as provided in KRS 304.39–140(3). The reparation obligor shall elect to assert its claim (i) *by joining as a party in an action that may be commenced by the person suffering the injury, or (ii) to reimbursement, pursuant to KRS 304.39–030,* sixty (60) days after said claim has been presented to the reparation obligor of secured persons. The right to recover basic reparation benefits paid under (ii) shall be limited to those instances established as applicable by the Kentucky Insurance Arbitration Association as provided in KRS 304.39–290.

KRS 304.39–070 (emphasis added);

Priority of applicability of security for payment of basic reparations benefits The basic reparation insurance applicable to bodily injury to which this subtitle applies is the security covering the vehicle occupied by the injured person at the time of the accident or, if the injured person is a pedestrian, the security covering the vehicle which struck such pedestrian. *If the reparation obligor providing such insurance fails* to make payment for loss within thirty (30) days after receipt of reasonable proof of the fact and the amount of loss sustained, the injured person shall be entitled to payment under any contract of basic

reparation insurance under which he is a basic reparation insured and *the insurer making such payments shall be entitled to full reimbursement from the reparation obligor providing the security covering the vehicle.*

KRS 304.39–050. (emphasis added).

As is clear from a plain reading of these statutes, both KRS 304.39–070 and KRS 304.39–050 allow for a reparations obligor to seek reimbursement of BRB paid to an injured party, but vary in that each statute has specific limitations controlling how and by whom an action may be brought. As discussed below, KRS 304.39–070, while more liberal on who may bring an action, limits the forum in which the claim may be pursued. In contrast, KRS 304.39–050 does not apply to all insurance companies, but rather only to secondary insurers who have stepped forward and paid BRB in the place of the vehicle insurer. Applying these obvious restrictions, we turn to the case at bar and determine whether National may pursue its claim via KRS 304.39–070 or 304.39–050.

### 1. *KRS 304.39–070*

█ We first address the question of whether National may pursue its claim via KRS 304.39–070, which provides in pertinent part:

A reparation obligor shall have the right to recover basic reparation benefits paid to or for the benefit of a person suffering the injury from the reparation obligor of a secured person as provided in this subsection....

*The reparation obligor shall elect to assert its claim (i) by joining as a party in an action that may be commenced by the person suffering the injury, or (ii) to reimbursement, pursuant to KRS 304.39–030* [Arbitration]....

A plain reading of KRS 304.39–070 reveals that in order for an insurer to employ this statute for reimbursement it must have paid BRB to an injured party and it must have either joined in an existing action by the person suffering the injury or submitted its claim to arbitration. Applying these rules to this case, we conclude that National, as a reparations obligor having paid BRB, was entitled to employ this statute as a vehicle for recovery. However, because National did not comply with the constraints on how an action under KRS 304.39–070 maybe brought—through joinder or under arbitration—we hold that its action must be dismissed.

In *Progressive Cas. Ins. Co. v. Kidd,* 602 S.W.2d 416, 417 (Ky.1980), this Court held that where a subrogation action is brought under KRS 304.39–070, a claimant's options "only include joinder as a party plaintiff and arbitration." We further opined that the statute plainly says that the "reparation obligor shall elect to assert its claim in one of the two specified ways." *Id.* Applying this rule to the case at bar, it is clear that National did not comply with the dictates of KRS 304.39–070.

Here, National pursued its claim in an independent action outside the lawsuit brought by Wilkerson, and did not pursue an action in arbitration. Thus, because it defied the procedural dictates of KRS 304.39–070, we hold that its claim was not properly asserted, and the case should be dismissed.

We are mindful, however, of National's argument that it never received notice regarding Wilkerson's lawsuit, and further the challenge faced by subrogees in similar circumstances. However, KRS 304.39–070 did not entirely foreclose National's ability to pursue its claim. The arbitration route was at all times available. And with regard to National's argument that it is not a member of the Kentucky Insurance Arbitration Association, and therefore unable

to bring an arbitration action, we consider that argument meritless. As required by KRS 304.39–290(2), "all basic reparation obligors shall be and remain members of the association as a condition of their authority to transact business in this Commonwealth." As the record reveals, "the events which are the subject of this action occurred in Jefferson County, Kentucky," and National is a self-insured corporation registered with the Kentucky Department of Insurance. Thus, National as a basic reparations obligor in this state, was required to register under KRS 304.39–290(2). By neglecting to become a member of the Kentucky Insurance Arbitration Association, National defied the law of this Commonwealth. As a result, we hold that it may not now cry foul because it is precluded from an avenue of recovery as a result of its own inaction.

### 2. *KRS 304.39–050*

■ Having determined that National's claim may no longer be pursued under KRS 304.39–070 due to its failure to comply with the mandates of that statute, we next turn to whether National may pursue its claim via KRS 304.39–050 and conclude that it cannot.

A perusal of KRS 304.39–050 reveals that the Legislature simply did not provide vehicle insurers with the ability to recover BRB under this subsection. The plain language of KRS 304.39–050 provides,

The basic reparation insurance applicable to bodily injury to which this subtitle applies *is the security covering the vehicle occupied by the injured person at the time of the accident.* . . . *If the reparation obligor providing such insurance fails* to make payment for loss within thirty (30) days after receipt of reasonable proof of the fact and the amount of loss sustained, the injured person shall be entitled to payment under any contract of basic reparation insurance under which he is a basic reparation insured and *the insurer making such payments* shall be entitled to full reimbursement from the reparation obligor providing the security covering the vehicle. (emphasis added).

Per the plain language of the statute, KRS 304.39–050 only permits the secondary insurer to employ KRS 304.39–050 to recover BRB from the security covering the vehicle (vehicle insurer). That scenario, however, is in stark contrast to the case *sub judice.* Here, National provided the security covering the vehicle and now seeks reimbursement for BRB from a secondary insurer, Progressive. This statute simply does not provide for such an action and no reading of this subsection supports the proposition that the insurer of the vehicle has a separate and independent right to bring the action to recover fees that is has paid to an injured party.

National's reliance on *Affiliated,* 641 S.W.2d 49, for the opposite proposition is misplaced. In *Affiliated,* the Court of Appeals addressed whether the procedural mandates of KRS 304.39–070 (to join in an existing action or to arbitrate) applied to a subrogation action brought pursuant to KRS 304.39–050. In distinguishing KRS 304.39–050 from KRS 304.39–070, the court aptly held,

KRS 304.39–050 sets forth a remedy as well as a right. We do not construe the statute [KRS 304.39–050] as limiting a reparation obligor's right to full reimbursement to situations in which it has either intervened or submitted its claim to arbitration under the guidelines set forth in KRS 304.39–070(3). Intervention may be impossible if—as is the instant case—no separate action has been filed. And, if the insurer were required to submit its claim for reimbursement to the arbitration procedures set forth in

KRS 304.39–070(3), it would not obtain full reimbursement given the minimum deductible requirement set forth in KRS 304.39–290. Accordingly, the trial court acted correctly in ruling that the appellee's claim was not barred by the provisions of KRS 304.39–070(3). Cf. *Riverside Insurance Co. v. McDowell,* Ky. App., 576 S.W.2d 268 (1979).

641 S.W.2d at 51. However, the facts before us are quite different than those faced in *Affiliated.* In this case, National, the primary obligor argues its right to subrogation under the auspices of KRS 304.39–050. *Affiliated,* on the other hand, addressed whether a secondary insurer who asserts a claim under KRS 304.39–050 is required to submit to the procedural requirements of KRS 304.39–070. *Id.* As stated above, KRS 304.39–050 provides that opportunity to a secondary insurer against a primary insurer, not vice versa.

We do, however, agree with *Affiliated*'s proposition that KRS 304.39–050 creates a separate and independent right outside the procedural mandates of KRS 304.39–070. Furthermore, we agree that KRS 304.39–050 is not confined by the procedural dictates of KRS 304.39–070, i.e., to arbitrate or join in an existing action. However, we do not agree with the Court of Appeals in this case that *Affiliated* supports the proposition that a vehicle insurer may employ KRS 304.39–050 to assert a subrogation claim. A close reading of *Affiliated* reveals that the question of whether the vehicle insurer may institute a subrogation claim via KRS 304.39–050 was simply not at issue in that case. Rather, that court answered whether the procedural mandates in KRS 304.39–070 should be included in an action brought by a secondary insurer seeking reimbursement from the vehicle insurer via KRS 304.39–050. Here, the Court of Appeals erred in interpreting *Affiliated* as holding otherwise.

### III. *Conclusion*

For the foregoing reasons, the Court of Appeals is reversed and this case is remanded to the Jefferson Circuit Court with instruction to enter summary judgment in favor of Progressive.

All sitting. All concur.