**Kyle P. DANAHER, Appellant**

v.

**Elonmarie HOPKINS, Appellee**

NOS. 2013–CA–001689–ME &
2013–CA–001690–ME

Court of Appeals of Kentucky.

RENDERED: OCTOBER
24, 2014; 10:00 A.M.

---

2. Parks has no disciplinary history.

Briefs for Appellant: Matthew J. Baker, Bowling Green, Kentucky.

Briefs for Appellee: Rebecca A. Simpson, Bowling Green, Kentucky.

BEFORE: ACREE, CHIEF JUDGE; MAZE AND VANMETER, JUDGES.

*OPINION*

VANMETER, JUDGE:

Kyle P. Danaher appeals from the Warren Circuit Court's order denying his petition for registration of a foreign child custody order. Danaher also appeals from the order determining that the Warren Circuit Court had jurisdiction to determine custody of the parties' minor child, K.M.D. For the following reasons, we affirm in part, and dismiss in part.

Danaher and Elonmarie Hopkins were married in November 2008 and their son, K.M.D., was born in November 2009. Shortly thereafter, the family moved to Grand Forks, North Dakota. About a year later, K.M.D. was admitted to the hospital and diagnosed with bilateral subdural hematomas-large, bilateral retinal hemorrhages and a healed rib fracture, requiring a permanent shunt to be inserted into his head. An investigation re-

vealed that these injuries resulted from Danaher violently shaking the child. Ultimately, Danaher was convicted of felony Abuse of a Child and felony Neglect of a Child in North Dakota. He was sentenced to two years of electronic home monitoring and three years of supervised probation.

Throughout the course of the child abuse investigation, Hopkins admitted that Danaher had previously committed acts of domestic violence against her. In February 2010, Hopkins sought and obtained an order of protection against Danaher in North Dakota. In July 2010, Hopkins served three months in jail on unrelated charges, during which time K.M.D. moved to North Carolina to live with his paternal aunt. Upon her release, Hopkins relocated to North Carolina and resumed physical custody and care of the child. The parties lived with Danaher's relatives while in North Carolina, with Danaher continuing to be on home incarceration.[1]

In August 2011, the parties separated, and Hopkins and K.M.D. moved to Massachusetts to live with her mother. Soon thereafter, Hopkins and K.M.D. moved with her mother to Kentucky, as evidenced by a lease agreement signed in October 2011. In November 2011, Hopkins, however, signed another lease in North Carolina. Hopkins claims the North Carolina apartment was to serve as a place for Danaher to visit his child, since he could not travel due to his electronic home monitoring sentence. Until early April 2012, Hopkins and the child traveled back and forth between North Carolina and Kentucky. Hopkins claims Kentucky has been her and K.M.D.'s permanent residence since November 2011.

Conflict continued between the parties and an incident in late February 2012 led to Danaher allegedly becoming violent with Hopkins. In early April of that year, Hopkins permanently left North Carolina with K.M.D. Danaher and his family admit that early April 2012 was the last time they saw K.M.D. in North Carolina. The child has resided solely in Kentucky since April 2012.

On November 8, 2012, Danaher filed a complaint in Dare County, North Carolina District Court seeking joint custody of K.M.D. In the complaint, Danaher claimed that Hopkins and the child had lived in Kitty Hawk, North Carolina until July 2012. He did not disclose his felony child abuse convictions, the fact that he remained on electronic home monitoring for such convictions, or any evidence of the order of protection entered against him in North Dakota.

In the North Carolina custody action, a Custody Mediation Orientation was scheduled for December 5, 2012. On December 10, 2012, Danaher mailed the notice of the mediation along with the summons and complaint to Hopkins in Kentucky. Hopkins did not receive the documents until seven days after the scheduled mediation, and the documents were received and signed for by Hopkins's mother. Hopkins contacted the mediator identified in the notice, but did not file a response to Danaher's complaint. A hearing on the complaint was held on July 1, 2013, and Hopkins was not present. Although Danaher originally requested joint custody, the July 2, 2013 order of the North Carolina court granted Danaher sole custody of K.M.D. Hopkins subsequently filed an appeal of that order with the North Carolina court.

On July 10, 2013, Hopkins filed a Domestic Violence Petition in Warren Circuit

---

1. As noted, Danaher's conviction was in North Dakota. For reasons not entirely clear from the record, his probation and home incarceration were transferred to North Carolina.

Court after Danaher informed her he was coming to take custody of K.M.D. In this petition, Hopkins sought an order of protection for herself and K.M.D., as well as temporary custody of the child. A hearing on Hopkins's petition was held on July 23, 2013, with both parties present. Following the hearing, the court entered an order restraining Danaher from having contact with Hopkins. By exercising "temporary emergency jurisdiction" under KRS[2] 403.828, the court also restrained Danaher from having contact with K.M.D. and granted Hopkins temporary custody until a jurisdictional hearing with the North Carolina court could be held. On July 11, 2013, Danaher filed the North Carolina custody order with the court in Kentucky, attempting to register it as a foreign child custody order and have it enforced in Kentucky.

On July 25, 2013, and continuing on August 7, 2013, a jurisdictional hearing was conducted with the Kentucky and North Carolina courts communicating telephonically to allow the parties to present evidence regarding subject matter jurisdiction and proper notice. Hopkins presented evidence of Danaher's history of domestic violence and causing injury to both her and their child. Danaher admitted that he did not disclose the North Dakota child abuse conviction or the protective order to the North Carolina court. Hopkins presented photographic evidence of her and the child in Kentucky between October 2011 and July 2013, as well as emails with the landlord in North Carolina indicating she had been living in Kentucky since April and was breaking her lease, drastically reduced utility bills from the North Carolina apartment for the months of April, May, June and July 2012, and a Kentucky driver's license issued in May 2012.

The state courts were unfortunately unable to reach an agreement regarding which state was the child's home state. The Warren Circuit Court issued an order on September 6, 2013, finding that North Carolina was not K.M.D.'s home state for jurisdictional purposes. Next, the court found that Danaher did not provide necessary information to the North Carolina court as required by KRS 403.838. Lastly, the court found that Hopkins was not afforded proper notice or due process regarding the proceedings in North Carolina. The Warren Circuit Court concluded that based upon the evidence presented at the hearing and the court's assessment of the credibility of both parties, North Carolina did not exercise jurisdiction in substantial conformity with the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), KRS 403.800 to 403.880, in awarding sole custody to Danaher. Consequently, Danaher's motion to register the July 2, 2013 North Carolina custody order was denied.

In a separate order, also entered on September 6, 2013, the Warren Circuit Court found that Kentucky is K.M.D.'s home state, and thus Kentucky has proper jurisdiction to determine custody. The custody action was ordered to proceed before that court.[3] However, unlike the order denying Danaher's petition to register the foreign child custody order, this order did not state that it was a final and appealable order. Danaher appeals both orders.

---

2. Kentucky Revised Statutes.

3. At this time, Hopkins maintained temporary emergency custody over K.M.D. pursuant to the July 23 domestic violence order. The instant court order did not alter the status of the temporary custody order; it merely slated the custody action to proceed before the Warren Circuit Court.

■ On appeal, Danaher argues that the Warren Circuit Court erred by refusing to enforce the North Carolina custody decree, since it was obligated to do so pursuant to KRS 403.846. He claims North Carolina was K.M.D.'s home state at the time his complaint was filed in North Carolina, and therefore, the North Carolina court had jurisdiction to make a child custody determination in accordance with the UCCJEA.[4] In addition, Danaher argues that because North Carolina had jurisdiction initially, it enjoys exclusive, continuing jurisdiction under the UCCJEA, and the Kentucky court did not have the authority to modify or initiate a custody determination.

■ The Warren Circuit Court's determination of K.M.D.'s home state was a factual finding, but the ultimate query regarding jurisdiction over the custody dispute constitutes a legal question. The trial court's findings of fact may be set aside only if those findings are found to be clearly erroneous. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Findings of fact are clearly erroneous if they are not supported by substantial evidence. *Id.* "Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion and evidence that, when taken alone or in the light of all the evidence, ... has sufficient probative value to induce conviction in the minds of reasonable men." *Id.* (citations and quotations omitted). "Based on those findings of fact, we must then conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law." *Payton v. Commonwealth*, 327 S.W.3d 468, 471–72 (Ky. 2010) (citation omitted).

KRS 403.822,[5] governing initial child custody jurisdiction, instructs:

(1) Except as otherwise provided in KRS 403.828, a court of this state shall have jurisdiction to make an initial child custody determination only if:

(a) **This state is the home state of the child on the date of the commencement of the proceeding,** or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state; ...

(emphasis added). KRS 403.800(7)[6] defines "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding."

Danaher cites KRS 403.846, which states:

(1) A court of this state shall recognize and enforce a child custody determination of a court of another state **if the latter court exercised jurisdiction in substantial conformity with KRS 403.800 to 403.880** or the determination was made under factual circumstances meeting the jurisdictional standards of KRS 403.800 to 403.880 and the determination has not been modified in accordance with KRS 403.800 to 403.880.

(emphasis added). Danaher also cites KRS 403.852(2), "[a] court of this state shall recognize and enforce, but shall not modify, **except in accordance with Article 2,** a registered child custody determi-

---

4. Both Kentucky and North Carolina have adopted the UCCJEA. KRS 403.800 to 403.880; N.C. Gen. Stat. § 50A–101 to 50A–317.

5. N.C.G.S. § 50A–201.

6. N.C.G.S. § 50A–102(7).

nation made by a court of another state[,]" and KRS 403.866,

> [a] court of this state shall accord full faith and credit to an order issued by another state and **consistent with KRS 403.800 to 403.880** which enforces a child custody determination by a court of another state unless the order has been vacated, stayed, or modified by a court having jurisdiction to do so under Article 2.

(emphasis added). Danaher argues that these statutes, due to the "shall" language, mandate that a Kentucky court must enforce the North Carolina child custody order. However, as noted, each of these statutes contains an exception for cases not in conformity with Article 2 of the UCCJEA, which instructs the court on jurisdiction under the UCCJEA. KRS 403.822 to .840. Essentially, a Kentucky court must enforce a foreign child custody decree only when the issuing state had jurisdiction under the UCCJEA.

Both Danaher and his family admit that they have not seen K.M.D. in the state of North Carolina since early April 2012. While Hopkins did rent an apartment in North Carolina until approximately July 2012, she explained this as a means for Danaher to visit his child while on electronic home monitoring, and her reduced utility bills indicate that the North Carolina apartment was not used after April 2012 when she and K.M.D. permanently left the state following an act of domestic violence committed by Danaher. When Danaher filed his complaint on November 8, 2012, K.M.D. had not been in the state of North Carolina for seven months. The fact that Hopkins may have returned during the summer of 2012 to retrieve belong-ings has no bearing on the determination of K.M.D.'s home state. We agree with the trial court's determination that North Carolina was not K.M.D.'s home state for purposes of making an initial child custody determination under the UCCJEA.[7]

For these reasons, we agree with the trial court that the North Carolina court did not exercise jurisdiction in substantial conformity with KRS 403.800 to 403.880, and therefore did not possess the initial jurisdiction to make a child custody determination. Because North Carolina did not have initial jurisdiction, it does not have exclusive continuing jurisdiction over custody matters involving K.M.D.

 We also agree with the trial court's finding that Kentucky is K.M.D.'s home state. Hopkins presented substantial evidence that the child has resided in this state since early April 2012. Thus, K.M.D. had lived in Kentucky for over six months prior to November 8, 2012, when Danaher filed his custody petition in North Carolina. Pursuant to KRS 403.800(7), Kentucky was K.M.D.'s home state at that time. Further, since K.M.D. continues to reside in Kentucky, Kentucky continues to be the child's home state for purposes of child custody jurisdiction under the UCCJEA.

 Next, Danaher argues that the trial court's second order, finding that Kentucky is K.M.D.'s home state and ordering the child custody action to proceed before the Warren Circuit Court, was erroneous on grounds that North Carolina had continuing jurisdiction over custody matters. Hopkins filed a motion to dismiss Danaher's appeal of this order, claiming that the second order did not adjudicate the rights of all the parties and did not contain the

7. Hopkins also alleges that she did not receive proper notice, and the Warren Family Court made findings regarding Hopkins's lack of notice. The record also indicates that Danaher failed to include his domestic violence his-tory in his petition to the North Carolina court. However, these deficiencies do not bear on the home state of the child, which is the sole basis for determining jurisdiction. Therefore, we decline to address these claims.

requisite finality language, and therefore, the order was not final or appealable.

CR[8] 54.01 states: "A judgment is a written order of a court adjudicating a claim or claims in an action or proceeding. A final or appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding, or a judgment made final under Rule 54.02." While "CR 54.02 allows in certain circumstances for an appeal in a multi-claim action from a partial judgment disposing of less than all the claims, that rule requires that the partial judgment recite both that the judgment is 'final' and that 'there is no just reason for delay.'" *Spencer v. Estate of Spencer*, 313 S.W.3d 534, 540 (Ky. 2010) (citation omitted). Absent such finality language, the rule is not invoked. *Id.*

We agree with Hopkins that the second order was not a final and appealable order. The order did not adjudicate the rights of either party, and did not grant either parent custody. *See Druen v. Miller*, 357 S.W.3d 547, 549 (Ky. App. 2011) (temporary custody orders are interlocutory and non-appealable). The order merely ordered the action to proceed before the Warren Circuit Court, and did not state that the order was final, appealable, or that "there is no just reason for delay". Therefore, we dismiss Danaher's appeal of the order regarding jurisdiction pursuant to the UCCJEA.

The order of the Warren Circuit Court denying registration of a foreign child custody order is affirmed, and the appeal of the order regarding jurisdiction pursuant to the UCCJEA is dismissed.

ALL CONCUR.

8. Kentucky Rules of Civil Procedure.