RENDERED: MARCH 14, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0251-MR

JUSTIN ALDAVA                                               APPELLANT

V.                             ON APPEAL FROM COURT OF APPEALS
NO. 2023-CA-0088
JEFFERSON CIRCUIT COURT NO. 21-CI-500526

HONORABLE ANGELA JOHNSON, JUDGE,            APPELLEE
JEFFERSON CIRCUIT COURT

AND

ALYSSA BAUM                                    REAL PARTY IN INTEREST

**OPINION OF THE COURT BY CHIEF JUSTICE VANMETER**

**<u>AFFIRMING</u>**

The Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") was drafted to increase the efficiency of courts faced with thorny issues of jurisdiction in interstate child custody matters. Central to the UCCJEA's scheme is differing bases for jurisdiction and the prioritizing of the child's "home state" jurisdiction, defined as "the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding",

with an exception for temporary absences. KRS[1] 403.800(7). The statutory language of the UCCJEA does not provide a definition for "temporary absence" and the courts of this state, as well as our sister states, have been left to develop their own standards for judging when an absence is temporary. Today we resolve the question within Kentucky jurisprudence of what standard to apply by adopting an objective standard for assessing when an absence is temporary, with the central inquiry focused on simply where the child was living in the six months preceding the child custody proceeding and abjuring a subjective assessment of the intent of the parties.

## **BACKGROUND**

This matter centers around custody of soon-to-be five-year-old H.A. H.A. was born in Texas on June 18, 2019, to Justin Aldava and Alyssa Baum. On December 10, 2019, Baum and H.A. left Texas to stay with Baum's family in Kentucky. Baum testified that she intended to stay in Kentucky, while Aldava contends it was meant as a temporary visit. In any case, Baum returned to Texas with H.A. on or around March 28, 2020.

The family remained in Texas until May 29, 2020, when they relocated to Yelm, Washington for Aldava's work. Aldava is a wind turbine blade technician and his job frequently requires him to relocate for indefinite periods of time. Such was the case for the move to Yelm. While there, the family signed a lease

---

[1] Kentucky Revised Statutes.

on a residence,[2] received mail,[3] and lacked a firm idea of when the family would be leaving Washington following completion of the job.

Baum, Aldava, and H.A. returned to Texas from Washington on October 3, 2020. Around November 22, 2020, Aldava again left Texas for work, this time without Baum and H.A. Shortly after Aldava left, Baum and H.A. decamped Texas for Kentucky and have remained here since that time.

On November 30, 2020, Baum filed a petition for an order of protection on behalf of herself and H.A.[4] In the petition, Baum indicated that she sought temporary custody of H.A. The court granted the order that same day. The order was amended on December 10, 2020 to grant temporary custody to Baum and to fix several minor errors. Aldava was not served with the order until April 7, 2021, however he testified that he was aware of the EPO through his attorney in Texas.

On December 14, 2020, Aldava filed a custody petition in Texas. Aldava's petition indicated that "[n]o court has continuing jurisdiction of this suit or of the child the subject of this suit" and at no point does the petition refer to the EPO in Kentucky or request the Texas court analyze jurisdiction under the UCCJEA. Baum did not appear before the Texas court. The Texas

---

[2] Parties dispute whether this was a month-to-month lease on an apartment or a week-to-week rental of an Airbnb.

[3] Parties dispute the amount of mail received at the residence, though at minimum Amazon packages were delivered there.

[4] Although the limited record before us indicates the petition filed was an interpersonal protective order, the parties have consistently referred to the order as an emergency protective order ("EPO"). Like the Court of Appeals, we will refer to the order as an EPO as the distinction between the two is immaterial to this writ.

court entered a temporary custody order on January 26, 2021, finding "that the pleadings of the Petitioner are in due form and contain all the allegations, information, and prerequisites required by law The Court, after receiving evidence, finds that it has Jurisdiction of this case and of all parties." The order also briefly indicated Texas was H.A.'s home state. The order contained no discussion of the UCCJEA.

Baum initiated her own custody action in Kentucky on March 2, 2021. On May 3 of that year, Baum requested the Jefferson Circuit Court conduct a UCCJEA conference with the Texas court. For reasons unknown, that conference did not occur until more than a year later and little record was made of its contents. The circuit court's November 23, 2022 order finding Kentucky jurisdiction, discussed below, states, "The [Circuit] Court also engaged in a telephone conference with the Court in Texas. Neither Court felt comfortable asserting superior jurisdiction and agreed that further proceedings were necessary." Records from the Texas court confirm the conversation and indicate, "Judge Johnson will email decision on KY keeping jurisdiction."

On September 23, 2022 parties appeared before the circuit court to discuss jurisdiction under the UCCJEA. On November 23, the circuit court issued the abovementioned order finding primarily that (1) Texas was not the home state of H.A. by virtue of the family's time in Washington and (2) because of the EPO, Kentucky has emergency jurisdiction of H.A. against which Texas has no basis to interfere. Thus, the circuit court determined that Kentucky

4

was the only state with any jurisdiction over H.A. and the custody action should be heard here.

Aldava then filed a direct appeal, Case No. 2023-CA-0001,[5] as well as this original action seeking a writ of prohibition. The Court of Appeals denied the writ, finding the circuit court had jurisdiction to enter the initial custody determination pursuant to KRS 403.828. As to Kentucky's retention of jurisdiction, the Court of Appeals found that Texas "presumably assumed jurisdiction under th[e] mistaken belief" that no other court had exercised jurisdiction over H.A. and issued a standard statement that it had jurisdiction. Further, the Court of Appeals found the circuit court's finding that the family's stay in Washington disrupted H.A.'s residency in Texas was supported by sufficient evidence and was not clearly erroneous.

After the Court of Appeals rendered its decision, and after Aldava appealed as a matter of right[6] to this Court, Aldava returned to the Texas court and requested a hearing on UCCJEA jurisdiction in the Texas custody case. Baum was not present for the hearing. Following the hearing, the Texas court entered an order on July 24, 2023, finding that the move to Washington was temporary and did not disrupt H.A.'s Texas residency and accordingly "Texas had proper, initial home state, ongoing jurisdiction to hear the entirety of the custody matter beginning immediately upon the commencement of the case on

---

[5] The direct appeal was dismissed as interlocutory by order entered March 1, 2023.

[6] Kentucky Rule of Appellate Procedure ("RAP") 60(I).

5

December 14, 2020." The transcript of the hearing and the Texas court's order were entered into the record of this appeal by our grant of Aldava's Motion to Supplement the Record.

## STANDARD OF REVIEW

As we have often said, "[t]he issuance of a writ is an extraordinary remedy that is disfavored by our jurisprudence. We are, therefore, 'cautious and conservative both in entertaining petitions for and in granting such relief.'" *State Farm Mut. Automobile Ins. Co. v. Edwards*, 670 S.W.3d 873, 878 (Ky. 2023) (quoting *Caldwell v. Chauvin*, 464 S.W.3d 139, 144–45 (Ky. 2015)). Writs fall into two classes:

> The first class requires a showing that "the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court." The second class requires a showing that "the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise."

*Id.* (citations omitted) (quoting *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004)). Because Aldava alleges the circuit court is proceeding outside of its jurisdiction, he "need not establish the lack of an adequate alternative remedy or the suffering of great injustice and irreparable injury." *Goldstein v. Feeley*, 299 S.W.3d 549, 552 (Ky. 2009). "When the lower court is alleged to be acting outside its jurisdiction, as alleged in the present case, the proper standard is de novo review because jurisdiction is generally only a question of law." *Karem v. Bryant*, 370 S.W.3d 867, 870 (Ky. 2012). To the extent factual findings are implicated, "the standard on appellate review requires a great deal of deference

6

both to its findings of fact and discretionary decisions." *Frances v. Frances*, 266 S.W.3d 754, 758 (Ky. 2008).  This principle is especially true where, as here, we have only a very limited record before us.

**ANALYSIS**

**I.    The Uniform Child Custody Jurisdiction and Enforcement Act.**

The UCCJEA was enacted with the intent to "discourage jurisdictional controversies between the states," and "promote uniformity in state jurisdictional laws."  MARIE FAHNERT & MÉLYSE MPIRANYA, CHILD CUSTODY JURISDICTION: THE UCCJEA & PKPA xv (ABA Book Publishing 2015).  Kentucky has embraced the UCCJEA through its enactment of KRS 403.800 to 403.880.  Texas too has codified the UCCJEA as Texas Family Code Chapter 152.  The two enactments are largely identical.

Under the UCCJEA, there are three general ways a court may exercise jurisdiction of a case involving a minor child: initial jurisdiction, jurisdiction to modify, or emergency jurisdiction.[7]  Initial jurisdiction is found if the state

> is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent . . . continues to live in this state[.]

---

[7] Other courts have rightly identified four bases for jurisdiction, *see Rosen v. Celebrezze*, 883 N.E.2d 420, 427 (Ohio 2008), however, the three paths to jurisdiction identified by the Jefferson Circuit Court are more prescient to the current matter and as a result we follow that roadmap here.

7

KRS 403.822(1)(a); TEX. FAM. CODE ANN. § 152.201(a)(1).[8] "'Home state' means the state in which a child **lived** with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding." KRS 403.800(7); TEX. FAM. CODE ANN. § 152.102(7) (emphasis added). A temporary absence is part of that period, or, put another way, the temporary removal of the family from the state would not reset the clock in determining home state status. *Id.*

A state with home state jurisdiction has exclusive, continuing jurisdiction until,

> (a) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
>
> (b) A court of this state or a court of another state determines that the child, the child's parents, and any other person acting as a parent do not presently reside in this state.

KRS 403.824; TEX. FAM. CODE ANN. § 152.202.

> Jurisdiction to modify a child custody determination is granted if,
>
> a court of this state has jurisdiction to make an initial determination under KRS 403.822(1)(a) or (b) and:
>
> > (1) The court of the other state determines that it no longer has exclusive, continuing jurisdiction under KRS 403.824 or that a court of this state would be a more convenient forum under KRS 403.834; or

---

[8] We cite the Texas Family Code provision where the two are substantively identical. References to the Kentucky statutes in the KRS version, are, of course, replaced by references to Texas statutes in the Texas version.

> (2) A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

KRS 403.826; TEX. FAM. CODE ANN. § 152.203. A court may also decline jurisdiction as an inconvenient forum after consideration of a number of factors. KRS 403.834; TEX. FAM. CODE ANN. § 152.207.

Finally, a state may exercise emergency jurisdiction "if the child is present in this state and . . . it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." KRS 403.828(1); TEX. FAM. CODE ANN. § 152.204(a). This emergency jurisdiction can potentially be lost if the following occurs:

> If there is no previous child custody determination that is entitled to be enforced under KRS 403.800 to 403.880 and a child custody proceeding has not been commenced in a court of a state having jurisdiction under KRS 403.822, 403.824, and 403.826, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under KRS 403.822, 403.824, and 403.826.

KRS 403.828(2); TEX. FAM. CODE ANN. § 152.204(b). However,

> If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under KRS 403.822, 403.824, and 403.826, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

*Id.*

Having set forth the statutory bases for jurisdiction under the UCCJEA, we now turn to which state has jurisdiction over this particular custody matter.

9

## II. Neither Kentucky nor Texas had initial jurisdiction over H.A.

The first question we must answer is which state, if any, possesses initial jurisdiction over the custody of H.A. The UCCJEA grants initial jurisdiction to the home state of the child. As we have noted, a child's home state is where he has lived with a parent for six months prior to the commencement of a custody proceeding, notwithstanding any temporary absences. In the case of H.A., because no dispute exists that Kentucky was not the child's home state when the EPO was first granted, we need only address whether Texas properly had initial jurisdiction. Resolution of whether Texas is H.A.'s home state turns on whether the family's move to Washington should be considered temporary or permanent and who gets to make that determination.

As to the first part of this inquiry, we are confronted with two competing assessments of H.A.'s home state. The Jefferson Circuit Court found that the time in Washington was permanent, pointing to the fact that "Aldava testified that he signed a lease in Washington, received mail in Washington, and had an indefinite end time for his stay." Thus, the time spent in Washington ended any six-month period of residency in Texas.

The Texas court found the opposite. That court observed that (contrary to the findings of the circuit court) mail was still sent to the family's Texas address, the family lived in hotels and an Airbnb, Aldava's next job site was Texas, and the family returned to Texas after the job ended. Accordingly, the Texas court determined the move to Washington was temporary and H.A. had

10

spent the requisite six months in Texas needed to establish that state as his home state.

Insofar as we are tasked with evaluating the circuit court's factual findings, those finding were supported by substantial evidence and not clearly erroneous. What constitutes a "temporary absence" under UCCJEA has been a question that has bedeviled courts since the creation of the model code. The lack of a definition of "temporary absence" in the UCCJEA has led to the development of different methods of assessment in the various states, although broadly courts either apply an objective or subjective standard. Peter W. Buchbauer & Lawrence P. Vance, *"Temporary Absence": A Continuing Obstacle to Clarity in Child Custody Jurisdiction*, 60 VA. LAWYER 44, 45 (Feb. 2012). "Courts applying the objective standard tend to focus on a bright line of where the child lived for the six months immediately preceding the filing of the suit." *Id.* Alternately, "courts applying a subjective standard look to such factors as the parties' intent, the length of absence, and the child's prior contact with the forum." *Id.*

Kentucky has never explicitly adopted a method of determining when an absence is temporary, but our consideration of the issue convinces us the objective test is more in keeping with the UCCJEA's meaning and purpose. The UCCJEA was intended to simplify and expedite the resolution of interstate custody battles by creating uniform rules for determining jurisdiction. In part, the UCCJEA achieves this goal by granting priority to the home-state jurisdiction (a change from the act's predecessor, the Uniform Child Custody

11

Jurisdiction Act ("UCCJA")) which can be determined by applying a simple test: finding where has the child lived in the six months prior to the custody action. If in the previous six months the child has lived in a single state then that state is clearly the child's home state. If the child did not reside in a single state in the preceding six months then the child lacks a home state and some other basis for jurisdiction must be found. This bright-line test eliminates the unpredictability of a subjective approach—amply demonstrated in the case of H.A.—and facilitates the objectives of the UCCJEA.

The language of the UCCJEA, as adopted by our General Assembly, lends further support for the objective approach. KRS 403.800(7) uses the word "lived" in defining how to determine a child's home state rather than "resided" or "domiciled." Where an individual is "living" is distinct from his residence and domicile. Whereas where one resides or is domiciled is based upon consideration of a variety of factors, making it "difficult, at times, to determine just where one's legal residence is", *Boyd's Ex'r v. Commonwealth*, 149 Ky. 764, 767, 149 S.W. 1022, 1023 (1912), to "live" somewhere is simply "to maintain oneself" or "to occupy." *Live*, Webster's Ninth New Collegiate Dictionary (1983). The use of the word "lived" suggests our Legislature wanted to make the process of determining a child's home state as straight-forward as possible by eliminating the consideration of subjective factors in favor of a more mechanical approach. We are not alone in coming to this conclusion. *See, e.g., Powell v. Stover*, 165 S.W.3d 322, 326 (Tex. 2005); *Escobar v. Reisinger*, 64

12

P.3d 514, 517 (N.M. 2003); *In re Marriage of Schoeffel,* 644 N.E.2d 827, 843 (Ill. App. Ct. 1994).

As our sister states have observed, this does not make jurisdiction determinations unresponsive to the specific circumstances of the case. A brief stay in a hotel while on vacation in another state would still be considered a temporary absence, since no reasonable argument could be advanced that a family on vacation lives in their hotel. Additionally, the Texas Supreme Court noted

> Two other sections of the UCCJEA provide the flexibility needed to avert potential injustice once the trial court has determined the child's home state. The first, section 152.208, states that if a court acquires jurisdiction "because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct," then with certain exceptions "the court shall decline to exercise jurisdiction." TEX. FAM. CODE § 152.208. Thus, for example, were a state to acquire home-state jurisdiction through a parent's illegal or improper actions, the court could decline to exercise jurisdiction. The second, section 152.207, is the inconvenient-forum provision; it allows the home-state court to defer jurisdiction if the court is an inconvenient forum under the circumstances and a court in another state would provide a more appropriate forum. *Id.* § 152.207.

*Powell,* 165 S.W.3d at 327. The reasoning is equally true in light of Kentucky's adoption of substantively identical provisions in KRS 403.834 and 403.836.

In sum, we hold that for determining where a child lived for purposes of establishing home-state jurisdiction, the physical location of the child must be the central consideration. *See Powell,* 165 S.W.3d at 328. To the extent our jurisprudence has adopted an incompatible standard, we now expressly overrule the conflicting portions of those opinions. *See Anderson v. Anderson,*

13

No. 2016-CA-001502-ME, 2017 WL 1379778, at *4-5 (Ky. App. Apr. 14, 2017) (observing that Kentucky courts have not fully defined "temporary absence" and proceeding to adopt a subjective test); *Dellapenta v. Goldy*, 575 S.W.3d 697, 699-700 (Ky. App. 2018) (following the factors set forth in *Anderson*).

Having now determined the standard to be applied in determining H.A.'s home state, we have no doubt that the circuit court's conclusion was correct. At H.A.'s birth, his home state was Texas. Five months later, H.A. and his mother were living in Kentucky, thereby divesting Texas of home-state status. When the family travelled to Washington, they undeniably lived there for several months, regardless of any intent to eventually return to Texas. Thus, from the first time H.A. left Texas for Kentucky, H.A. never lived in any state long enough to establish home-state status.[9] Thus, when Baum petitioned for an EPO and sought custody of H.A., no state could assert initial, home-state jurisdiction over the child. Although we now disclaim the circuit court's weighing of factors in determining H.A.'s home state, it nonetheless came to the right answer.

Having determined that neither Kentucky nor Texas possessed initial, home-state jurisdiction over H.A. when custody was first raised, we turn to the relatively uncomplicated issue of which state does have jurisdiction.

---

[9] After H.A. left Texas the first time he spent, in order of his moves, 3 months, 18 days in Kentucky; 2 months, 1 day in Texas; 4 months, 4 days in Washington; approximately 1 month, 19 days in Texas; and to present, 3 years, 3 months in Kentucky.

14

**III. Kentucky has Jurisdiction over H.A. pursuant to KRS 403.828.**

In the absence of a state able to assert home-state jurisdiction over H.A., there remains only one possibility: Kentucky properly has temporary emergency jurisdiction under KRS 403.828 by virtue of the EPO. KRS 403.828 provides for emergency jurisdiction in the event of an emergency to protect the child or parent of the child. KRS 403.828(1). Although described as temporary, jurisdiction under this section is not subject to a fixed period of expiration, or even to a more subjective reasonable period of time standard. Rather, jurisdiction obtained through KRS 403.828 continues until an order is received from a court of a state having a basis for jurisdiction under another provision of the UCCJEA. KRS 403.828(2). If no other state can assert another basis for jurisdiction, "a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child." *Id.*

In the case of H.A., no other state could assert jurisdiction under KRS 403.822, 403.824, or 403.826. Because jurisdiction does not exist elsewhere, no child custody determination made outside of Kentucky is entitled to deference by the circuit court. And because no other state has jurisdiction, the determination of the Jefferson Circuit Court can be made final and Kentucky can properly be considered the home state of H.A.

15

That the Texas court has now, belatedly, decided that Texas is H.A.'s home state does nothing to divest Kentucky of jurisdiction.[10] We agree with the Court of Appeals that the Texas court's first finding of jurisdiction in the January 26, 2021 order should not be read as finding initial jurisdiction under the UCCJEA. When the Texas court made that initial determination it did so without the benefit of awareness of the Kentucky EPO and, because of this, fundamentally lacked sufficient information to determine under the UCCJEA which state had jurisdiction. We also agree with the Court of Appeals that the notation in the Texas court's record that it would await a jurisdiction determination by Kentucky suggests the Texas court was, at that time, prepared to concede the issue. In any event, by the time the Texas court made a determination in reference to the UCCJEA, the Jefferson Circuit Court had already found jurisdiction in Kentucky. KRS 403.832 directs the Kentucky court to make the determination whether a child custody proceeding has been commenced in another state. KRS 403.832(2). Necessary in making that determination is adjudicating which states have jurisdiction under the UCCJEA and which do not. *Cf. Danaher v. Hopkins*, 449 S.W.3d 765 (Ky. App. 2014) (finding that where Kentucky entered an order finding North Carolina was not the home state of the child, Kentucky was not obligated to enforce a custody order issued by North Carolina where there was no basis for the latter

---

[10] We question whether the Texas court's conclusion follows the objective standard set forth by the Texas Supreme Court in *Powell,* but are, of course, without power to address that question.

16

to exercise jurisdiction).  If a state does not have a basis for jurisdiction, and the circuit court found Texas did not, there is no need for Kentucky to stay the proceeding and communicate with the foreign court.  Once Baum filed her first-in-time EPO petition, the ball was in Kentucky's court to make further findings as to where jurisdiction lay.

Additionally, pursuant to KRS 403.846(1) and TEX. FAM. CODE ANN. § 152.303(a), once a custody determination was made pursuant to the UCCJEA, the Texas court was obligated to "recognize and enforce [the] child custody determination[.]"  *See also,* KRS 403.866; TEX. FAM. CODE ANN. § 152.313 (both providing, "A court of this state shall accord full faith and credit to an order issued by another state and consistent with [this chapter] which enforces a child custody determination by a court of another state . . . []").  Kentucky's determination was made approximately 8 months prior to the hearing and order in Texas and the Texas court should have deferred to that ruling rather than issue its own, conflicting order.  This situation is precisely what the UCCJEA was designed to prevent.

This ruling does not mean H.A.'s case can never be transferred to Texas. KRS 403.834 provides,

> A court of this state which has jurisdiction under KRS 403.800 to 403.880 to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum.

KRS 403.834(1).  If Aldava so moves, or if the Texas court requests it, the circuit court shall consider a non-exhaustive list of factors to determine

17

whether it would be nevertheless more appropriate for the Texas court to hear the matter. Further, if Baum elects to leave Kentucky and reside elsewhere, Kentucky may lose jurisdiction and the court of another state could assert its authority. KRS 403.824(1)(b). However, until such an event occurs to divest Kentucky of jurisdiction, Kentucky will retain its power to preside over the custody case.

## CONCLUSION

For the foregoing reasons, the order of the Court of Appeals is affirmed.

All sitting. Bisig, Conley, Keller, Lambert and Nickell, JJ., concur. Thompson, J., concurs in result only.


COUNSEL FOR APPELLANT:

Miles Devon Skeens, IV
Skeens Law, PLLC


APPELLEE:

Hon. Angela Johnson, Judge
Jefferson Circuit Court


COUNSEL FOR REAL PARTY IN INTEREST,
ALYSSA BAUM:

Samantha Jo Hall
Fleur de Law LLC